UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ORLANDO DEJUAN DENAE MITCHELL, <br><br> Plaintiff, <br><br> v. <br><br> ST. JOSEPH COUNTY COMMUNITY CORR DuCOMB CENTER, et al., <br><br> Defendants. | CAUSE NO. 3:22-CV-397-RLM-JPK |

OPINION AND ORDER

Orlando Dejuan Denae Mitchell, a prisoner without a lawyer, filed a complaint. The court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Mr. Mitchell alleges he began working at Champion Chairs on March 9, 2022, while housed at the St. Joseph County Community Correction Work Release DuComb Center (the Center). On March 24, around 4:10 p,m,, he finished his shift and returned to the Center, where he was subjected to a routine body scan and strip search by Officer Lewis. During the search, Officer Lewis made "uncomfortable

noises" such as "Ummh Ummhuh." ECF 1 at 4. Mr. Mitchell told Officer Lewis it made him and other offenders uncomfortable. Officer Lewis escorted Mr. Mitchell to his outside locker in the hallway to put his belongings away, and then he took him to an interview room for "no professional reason." *Id*. at 5. Mr. Mitchell asked Officer Lewis and Ms. Lanette Thomas, the Program Manager, if he could use the bathroom, but they ignored his request. Mr. Mitchell ended up urinating on himself, but he didn't tell the staff about it. Shortly thereafter, Officer Lewis returned with another officer, who isn't named as a defendant, and told Mr. Mitchell that they had found an "unknown bottle of liquid" in his locker. Mr. Mitchell insists the liquid wasn't his.

Officer Lewis and Ms. Thomas then collected a urine sample from Mr. Mitchell for a drug test. They told him he wouldn't be allowed to work for the next three scheduled days (Friday, Saturday, and Monday). On Monday, March 28, his drug test results came back negative, but he lost wages of $100 for missing work while the test was pending. Mr. Mitchell filed a grievance about the matter, and on April 1, he received a response stating, "We will address the noises." ECF 1-1 at 4.[1]

On April 14, Mr. Mitchell was in the shower when the 2:00 p.m. count was called. Worried about getting in trouble, he got out of the shower and presented for count in a towel while he was still soaking wet. Officer Lewis made Mr. Mitchell stand

---

[1] Mr. Mitchell received a conduct report on March 25, 2022, for trafficking the clear bottle of liquid that was found in his locker, but those charges were dismissed because they weren't processed in a timely manner. *See* ECF 1-1 at 5–7.

2

there "freezing" until the count was finished about twenty minutes later. Mr. Mitchell placed on "work only" status for twenty-two days after the original incident.[2]

Around that time, Mr. Mitchell began to express his unhappiness to several staff members about what had happened. During a conversation between Mr. Mitchell and a staff member who isn't named as a defendant, Security Director Sterling got on the phone and tried to console Mr. Mitchell. A few days later, on April 20, Mr. Mitchell met with Assistant Director Moody and "explained how [he] felt [and] got very emotional." *Id.* at 8. Assistant Director Moody acted "concerned and apologetic" and told Mr. Mitchell he would try to fix things. *Id.* Assistant Director Moody asked what could be done to make his situation at the Center better, and Mr. Mitchell responded, "I can't and I won't answer that question." *Id.* Mr. Mitchell was taken off "work only" status the next day. He has sued Officer Lewis, Ms. Thomas, Program Director Sharon McBride, Assistant Program Director Moody, Security Director Sterling, and the Center for monetary damages.[3]

Under the First Amendment, an inmate can't be punished for engaging in certain kinds of speech. "To establish a prima facie case of unlawful retaliation, a

---

[2] Mr. Mitchell says, "Work only means I can't go to the doctor/dentist/hygiene passes/home passes/nowhere but work only." ECF 1 at 6. This allegedly occurred from March 24 to April 21.

[3] Mr. Mitchell also seeks injunctive relief in the form of firing Officer Lewis and preventing staff from retaliating against him. Mr. Mitchell has been released from the Center and is no longer a prisoner. *See* ECF 16 & ECF 20. Because there is no realistic likelihood that Mr. Mitchell will again be incarcerated at the Center and subjected to the same actions that he complains about here, his claims for injunctive relief are "purely speculative in nature" and must be dismissed. *See* Maddox v. Love, 655 F.3d 709, 716 (7th Cir. 2011) (citing Ortiz v. Downey, 561 F.3d 664, 668 (7th Cir. 2009)).

plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." Douglas v. Reeves, 964 F.3d 643, 646 (7th Cir. 2020) (internal quotation marks and citation omitted).

Mr. Mitchell alleges he confronted Officer Lewis during the search and told him his "Ummh Ummhuh" noises made him uncomfortable. He claims he was then placed in an interview room, accused of having a bottle of unknown liquid in his locker, drug-tested, told he would have to miss work during the pendency of the test results, and written up. Without more detail, these brief oral comments to Officer Lewis about the mundane noises he made during a routine search can't plausibly be classified as First Amendment protected activity. The court of appeals has found that confronting a guard verbally in an insubordinate manner can remove such speech from First Amendment protections. *See e.g.* Kervin v. Barnes, 787 F.3d 833, 835 (7th Cir. 2015) ("[B]acktalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected."); Cobian v. McLaughlin, 717 Fed. Appx. 605, 612 (7th Cir. 2017) (describing the oral communication as "insubordinate" and noting that the inmate "could (and later did) raise this concern in a less confrontational way by filing a grievance"); *see also* Bissessur v. Indiana Univ. Bd. of Trs., 581 F.3d 599, 602 (7th Cir. 2009) (claim must be plausible on its face and complaint must provide adequate factual content). Mr. Mitchell hasn't stated any

4

plausible claims upon which relief can be granted against Officer Lewis based on these allegations.[4]

The written grievance Mr. Mitchell filed sometime later does constitute First Amendment protected activity.[5] *See e.g.* Douglas v. Reeves, 964 at 646 ("[G]rievances against prison officials [] fall within the First Amendment's protections."). Mr. Mitchell claims that about two weeks later, on April 14, Officer Lewis made him stand in his towel while wet—having just exited the shower—for twenty minutes during an inmate count. Even if Officer Lewis's intentions for doing so were retaliatory, this action wouldn't likely deter an ordinary person from engaging in protected speech. *See id*. at 647 ("Whether retaliatory conduct is sufficiently severe to deter is generally a question of fact, but when the asserted injury is truly minimal, we can resolve the issue as a matter of law."). Therefore, these allegations do not state a claim on which relief can be granted.

Mr. Mitchell also alleges he was placed on "work only" status for twenty-two days after the incident. But he doesn't plausibly allege Officer Lewis was responsible for the classification decision, nor does he plausibly allege that a decisionmaker

---

[4] Mr. Mitchell alleges Ms. Thomas was also involved in drug testing him, but he doesn't allege she participated in or was even aware of the oral confrontation that had occurred between Mr. Mitchell and Officer Lewis during the search. Therefore, Mr. Mitchell has not stated any plausible claims against Ms. Thomas either.

[5] Mr. Mitchell does not state when he filed his written grievance, and the grievance form attached to the complaint is undated. ECF 1-1 at 4. However, he received a response to it on April 1, 2022, so it may be assumed he submitted it sometime between the evening the events occurred and April 1, 2022. *Id*. That said, it cannot be plausibly inferred that the grievance was submitted before the events of March 24th described in the paragraph above unfolded.

defendant was motivated by the filing of his grievance to classify him as restricted.[6] *See* Manuel v. Nalley, 966 F.3d 678, 680 (7th Cir. 2020) (motivating factor requires some "causal link between the activity and the unlawful retaliation"); Devbrow v. Gallegos, 735 F.3d 584, 588 (7th Cir. 2013) (speculation regarding the defendant's retaliatory motive is insufficient); *see also* Bissessur v. Indiana Univ. Trustees, 581 F.3d at 602. Moreover, to the extent Mr. Mitchell is alleging Program Director McBride, Assistant Program Director Moody, and Security Director Sterling are otherwise responsible for the alleged retaliation, liability under 42 U.S.C. § 1983 is based on personal responsibility, and prison officials can't be held liable for damages solely just they hold supervisory positions. Mitchell v. Kallas, 895 F.3d 492, 498 (7th Cir. 2018); Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). The only details Mr. Mitchell provides about these defendants is that they acted "concerned and apologetic" once they were informed of Mr. Mitchell's plight and that the classification restrictions were removed the day after Mr. Mitchell met with Assistant Director Moody to inform him of the situation. These allegations don't state a plausible claim for relief.

Finally, Mr. Mitchell has sued the Center itself.[7] To the extent the Center is an entity or arm of the Indiana Department of Correction, it isn't a proper defendant

---

[6] In fact, Mr. Mitchell alleges this restriction began on March 24, 2022, well before the filing of the protected grievance.

[7] The St. Joseph County official website describes the "St. Joseph County Community Corrections – DuComb Center" as "one of the first work release facilities in the state of Indiana. DuComb Center is a community-based residential facility located near the South Bend International Airport. Funded through the Indiana Department of Corrections (sic), St. Joseph County and client user fees,

because a state agency isn't a "person" that can be sued for constitutional violations under 42 U.S.C. § 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 64–66, 70–71 (1989). Additionally, the Eleventh Amendment would bar any claim for damages against the Department of Correction. de Lima Silva v. Dep't of Corr., 917 F.3d 546, 565 (7th Cir. 2019). Even if the Center could be considered a local government unit amenable to suit, Mr. Mitchell hasn't stated any plausible claims against it. *See e.g.* Sanders v. St. Joseph Cty., Ind., 806 Fed. Appx. 481, 485 (7th Cir. 2020) ("Even if we assume that the people who allegedly wronged [the plaintiff] were county employees—something that is far from clear—the county cannot be held liable for their actions simply as their employer. The county can be held liable only if their conduct was the result of an express or unofficial policy of the county or the product of a decision by a policymaker. The complaint does not hint at any such policy, so he failed to state a claim.") (internal citations omitted). Therefore, the claims against the Center will be dismissed.

This complaint doesn't state any claims for which relief can be granted. If Mr. Mitchell believes he can state a claim based on (and consistent with) the events described in this complaint, Mr. Mitchell may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." Abu-Shawish v. United States, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20)**

---

DuComb Center serves as an alternative to traditional incarceration. *See* http://www.sjcindiana.com/2084/About-Us (last visited Mar. 1, 2023).

**Prisoner Complaint** form.[8] After he properly completes that form addressing the issues raised in this order, he needs to send it to the court.

For these reasons, the court:

(1) GRANTS Orlando Dejuan Denae Mitchell until **April 3, 2023**, to file an amended complaint; and

(2) CAUTIONS Mr. Mitchell if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on March 2, 2023

                                        s/ Robert L. Miller, Jr.
                                        JUDGE
                                        UNITED STATES DISTRICT COURT

---

[8] Because he is no longer incarcerated, Mr. Mitchell can obtain the form on the court's website— he should use the prisoner complaint form because he was incarcerated when he initiated this lawsuit. https://www.innd.uscourts.gov/sites/innd/files/PrCmplnt.pdf