UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ORLANDO D. MITCHELL,

    Plaintiff,

    v.                                       CAUSE NO. 3:22-CV-397-JD-JEM

JERREMEY LEWIS, et al.,

    Defendants.

### OPINION AND ORDER

Orlando D. Mitchell, a prisoner without a lawyer, filed an amended complaint because the court previously determined his original complaint didn't state any claims. *See* ECF 24 & ECF 42. As required by 28 U.S.C. § 1915A, the court must screen the amended complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009). Because Mitchell is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mitchell, who is currently incarcerated at the Plainfield Correctional Facility, complains about events that happened at the St. Joseph County Community Correction DuComb Center (the DuComb Center) in the spring of 2022.[1] Specifically, on March 24, 2022, Mitchell arrived at the DuComb Center at approximately 4:00 PM after completing his offsite work shift. While waiting in the lobby for a routine strip search, he informed Officer Jerremey Lewis that he had to use the bathroom. During the search, Officer Lewis made "sexually uninvited/inappropriate noises." ECF 42 at 3. Afterwards, instead of being allowed to use the bathroom, Officer Lewis placed him in an interview room across the hall. When he asked why he had been placed in the room, he didn't receive a response.[2] During the "long wait," Mitchell asked several other staff members if he could use the bathroom, but he was ignored. *Id*. He eventually urinated on himself.[3] Shortly thereafter, he notified Security Director Sterling about the search

---

[1] He was incarcerated at the DuComb Center when he filed his original complaint, and he checked the box indicating the events he is suing about happened there. *See* ECF 1 at 1. The St. Joseph County official website describes the "St. Joseph County Community Corrections – DuComb Center" as "one of the first work release facilities in the state of Indiana. DuComb Center is a community-based residential facility located near the South Bend International Airport. Funded through the Indiana Department of Corrections (sic), St. Joseph County and client user fees, DuComb Center serves as an alternative to traditional incarceration." *See* http://www.sjcindiana.com/2084/About-Us (last visited Apr. 9, 2024). Mitchell was subsequently transferred to the St. Joseph County Jail (ECF 6), back to the DuComb Center (ECF 14), released (ECFs 16, 20, 22), reincarcerated at the St. Joseph County Jail (ECF 26), transferred to the Reception Diagnostic Center (ECF 29), and finally transferred to the Plainfield Correctional Facility where he currently resides (ECF 35). Although he checked the box on his amended complaint indicating the events he is suing about happened at the Plainfield Correctional Facility (*see* ECF 42 at 1), both the history outlined above as well as the substance of the amended complaint make it clear that is not the case—rather, they happened at the DuComb Center.

[2] In his original complaint, Mitchell alleged the reason for the delay was due to a search of his locker and an "unknown bottle of liquid" that was found in it. ECF 1 at 5. Officer Lewis subsequently collected a urine sample from Mitchell for a drug test.

[3] In his original complaint, Mitchell stated that he was embarrassed about urinating on himself, so he "didn't mention to the staff that I was soiled." ECF 1 at 5.

2

situation, who told him to write a grievance and indicated he would also notify Assistant Program Director Justin Moody and Program Director Sharon McBride once he reviewed the recorded audio/video footage.

Several weeks later, on April 15, 2022, Officer Sebre Jones escorted him to an interview room and handed him her cell phone because Security Director Sterling wanted to talk to him. They had a brief conversation during which Security Director Sterling "adamantly apologized [to Mitchell] about the situation at hand." *Id*. at 4. On April 20, 2022, Assistant Director Moody told Mitchell he had watched the recorded footage, which he described as "inappropriate," and asked him whether he had received a response to his grievance. Although Mitchell didn't receive notice of it until April 22, 2022, Program Director Sharon McBride had responded to his grievance on April 1, 2022, stating "Thank you . . . we will address the noises." *Id*. at 4–5.[4]

He has sued Officer Lewis for monetary damages for making sexually inappropriate noises during the search. He has also sued Security Director Sterling, Assistant Director Moody, and Program Director McBride for monetary damages because they were allegedly informed of Officer Lewis's "inappropriate behavior verbally through the chain of command and by grievance, to no avail." *Id*. at 5.

The Seventh Circuit has held that convicted prisoners "maintain a privacy interest, although diminished, in their bodies" under both the Fourth and Eighth

---

[4] Mitchell attached a copy of the grievance/response to his original complaint. ECF 1-1 at 4. In it, he simply expressed that he felt uncomfortable with the "Ummm huh" noises Officer Lewis made while conducting the strip search on March 24, 2022. *Id*.

3

Amendments. *Henry v. Hulett*, 969 F.3d 769, 779 (7th Cir. 2020). "Importantly, the Fourth and Eighth Amendments have different roles to play with respect to bodily searches and protect different categories of constitutional rights." *Id.* at 781. In either case, however, security and safety concerns must be always considered.

> [P]rison administrators are to take all necessary steps to ensure the safety of not only the prison staffs and administrative personnel, but also visitors. They are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves. They must be ever alert to attempts to introduce drugs and other contraband into the premises which, we can judicially notice, is one of the most perplexing problems of prisons today; they must prevent, so far as possible, the flow of illicit weapons into the prison; they must be vigilant to detect escape plots, in which drugs or weapons may be involved, before the schemes materialize.

*Id.* at 779 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

The Fourth Amendment recognizes the interplay between the inmate's privacy interest and institutional concerns, and "thus protects prisoners from searches that may be related to or serve some institutional objective, but where guards nevertheless perform the searches in an unreasonable manner, in an unreasonable place, or for an unreasonable purpose." *Id.* at 781. When reviewing these types of claims, courts must evaluate the reasonableness of the search and afford prison administrators wide-ranging deference on matters of policy as it relates to the need to "preserve internal order and discipline and to maintain institutional security." *Id.* at 783 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). "[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id.* The following situations have been recognized as reasonable because the level of intrusion

4

did not outweigh the purported justification—conducting thorough searches as part of the intake process, visual body cavity searches of pretrial detainees after contact visits, incidental observations of undressed inmates, visual body cavity searches of prisoners returning from work, and visual body cavity searches every time prisoner left or returned to maximum security unit. *Id*. at 783–84 (collecting cases). In general, courts must consider whether the searches were unreasonable in light of: (1) the scope of the intrusion, (2) the manner in which it was performed, (3) the justification for it, and (4) the place where it occurred. *Id*. at 784 (quoting *Bell*, 414 U.S. at 559).

For claims brought under the Eighth Amendment, on the other hand, there is a heightened subjective intent requirement. *Id*. at 780. This is because the Eighth Amendment "safeguards prisoners against the use of searches that correctional officers subjectively intend as a form of punishment." *Id*. at 781. Specifically, "[t]he Eighth Amendment prohibits punishments which involve the unnecessary and wanton infliction of pain, are grossly disproportionate to the severity of the crime for which an inmate was imprisoned, or are totally without penological justification." *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004).

Mitchell's amended complaint doesn't state a claim under either the Fourth or Eighth Amendments. The strip search is described as happening in a separate room near the "client lobby" of the DuComb Center as a routine matter when prisoners return after being off-property for work release. *See* ECF 42 at 3.[5] Mitchell does not

---

[5] *See also* original complaint, ECF 1 at 4–5 (describing full body scans and strip searches occurring in a routine manner).

allege he was fondled, subjected to sexually ribald comments, forced to perform provocative acts, or physically harassed—rather, he simply alleges Officer Lewis made unintelligible noises. Even taking Mitchell's assertions as true, the strip search described was not unreasonable in either manner, place, or purpose. This is especially true in light of understandable safety and security concerns related to returning from work offsite— namely, preventing contraband from entering the facility.[6] *Henry*, 969 F.3d at 784 (recognizing visual body cavity searches of prisoners returning from work as reasonable because the level of intrusion does not outweigh the purported justification). The fact that Officer Lewis made uninvited "inappropriate noises" during the search which made Mitchell uncomfortable doesn't transform it into a constitutional violation. *See e.g., Whitman*, 368 F.3d at 934 (strip search of inmate who was forced to stand naked in a bathroom for twenty minutes was not deemed "maliciously motivated" despite the fact he "felt humiliated" because it was "not a 'sufficiently serious condition of confinement to rise to the level of a constitutional violation"); *see also Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) ("There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation."); *Chatman v.*

---

[6] *See Henry*, 969 F.3d at 779 ("[A]ttempts to introduce drugs and other contraband into the premises which, *we can judicially notice*, is one of the most perplexing problems of prisons today.") (emphasis added). In his original complaint, Mitchell acknowledged he had tested positive for THC on the day he began work release at the DuComb Center and was subjected to subsequent urine samples. *See* ECF 1 at 4.

*Gossett*, 766 Fed. Appx. 362, 364 (7th Cir. 2019) (guard's "smile" while he strip-searched an inmate upon return from work was "not unconstitutional abuse").[7]

Mitchell also claims Program Director McBride, Assistant Program Director Moody, and Security Director Sterling are responsible for the alleged misbehavior of Officer Lewis because they were made aware of the situation afterwards both verbally and via grievance. However, liability under 42 U.S.C. § 1983 is based on personal responsibility, and prison officials cannot be held liable for damages solely because they hold supervisory positions. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Here, the only details Mitchell provides regarding these defendants is that they apologized once they were informed of the situation and issued a grievance stating the noises would be addressed. These allegations do not state a claim either.

---

[7] The court does not read Mitchell's complaint as attempting to bring a cause of action against Officer Lewis for refusing to let him use the bathroom while he waited in the interview room. Even if that is what he was intending, the amended complaint does not state a plausible claim. The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). Here, Mitchell alleges he needed to use the bathroom after he returned from work at approximately 4:00 PM on March 24, 2022, but he was ignored until he urinated on himself. He isn't clear as to a timeframe—he says only that it was a "long time." In any event, there is no indication he was denied access to bathroom facilities after he left the interview room, and he does not suggest the incident regarding the strip search or subsequent period in the interview room extended beyond the March 24, 2022, date he refers to. In general, while "long-term deprivations of modern toilet facilities" can potentially violate the Eighth Amendment, "temporary imposition[s]" do not. *White v. Knight*, 710 Fed. Appx. 260, 261–62 (7th Cir. 2018). Mitchell's complaint does not plausibly allege the deprivation was sufficiently serious to have violated the Eighth Amendment.

Mitchell was granted an opportunity to amend his complaint, but his new allegations fail to state any plausible claims upon which relief can be granted. For these reasons, this case is dismissed pursuant to 28 U.S.C. § 1915A.

SO ORDERED on April 15, 2024

>                   s/ JON E. DEGUILIO
>                   JUDGE JON E. DEGUILIO
>                   UNITED STATES DISTRICT COURT